

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Zachary A. Myers<br>Assistant United States Attorney<br>Zachary.Myers@usdoj.gov | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | DIRECT: 410-209-4848<br>MAIN: 410-209-4800<br>FAX: 410-962-0716 |

May 25, 2016

Paul D. Hazlehurst
Assistant Federal Public Defender
100 S Charles St Twr II 9th Fl
Baltimore, MD 21201

    Re:    *United States v. Janelle A. Rose* (TBD)

Dear Mr. Hazlehurst:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by close of business on **June 17, 2016**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to waive indictment and plead guilty to a one count Criminal Information charging her with Unauthorized Access of a Protected Computer in Furtherance of Fraud, in violation of Title 18, United States Code, Section 1030(a)(4). The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.    The Defendant accessed a protected computer without authorization;

        b.    The Defendant did so knowingly, and with the intent to defraud;

        c.    The Defendant's unauthorized access furthered the fraud; and,

        d.    The Defendant obtained anything of value.

### Penalties

    3.    The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for not more than five (5) years, followed by a term

of supervised release of not more than three years and a fine of up to $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

   a. If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

   e. If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

    i. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Information or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

    j. If the Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, the Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings.

### Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant understand, agree and stipulate, save as noted below, to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

   a.  Base Offense Level: The base offense level is six (6) pursuant to U.S.S.G. §2B1.1(a)(2).

   b.  Loss of More than $40,000: Pursuant to U.S.S.G. §2B1.1(b)(1)(D), there is a six (6) level increase because the intended loss was in excess of $40,000.

   c.  Ten or More Victims: Pursuant to U.S.S.G. §2B1.1(b)(2)(A)(i), there is a two (2) level increase because the offense involved ten or more victims.

   d.  Abuse of Private Trust: Pursuant to U.S.S.G. §3B1.3, there is a two (2) level increase because the Defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense.[1]

7.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office intends to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, assuming your client continues to acceptance of personal responsibility for his conduct up to, and through, his sentencing. This Office may oppose any adjustment for acceptance of responsibility if your client
(a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (t) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

8.  Thus, the final anticipated adjusted offense level is thirteen (13) or eleven (11).

9.  The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of his income.

10. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. Both parties reserve the right to recommend any lawful sentence using the factors set forth in 18 U.S.C. §3553(a).

---

[1] The Government is free to seek and the Defendant is free to oppose this advisory sentencing guideline factor.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Information or to the Court's entry of judgment against the Defendant, imposition of sentence upon the Defendant consistent with this agreement.

    d. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    e. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

13. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

14.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulations, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw the Defendant's guilty plea, and will remain bound to fulfill all of the Defendant's obligations under this agreement. The Defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Forfeiture

15.     The Defendant agrees to forfeit all right, title and interest in the Apple MacBook Pro seized by law enforcement authorities from her residence on November 20, 2015, and further agrees to take whatever steps are necessary to pass clear title to this property to the United States.

## Restitution

16.     The offense of conviction constitutes a crime against property under Title 18 of the United States Code. Therefore, under 18 U.S.C. §§ 3663A, 3663, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include return of the property to its owners or an amount equal to the lost or damaged property, as well as reimbursement to the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. 18 U.S.C. §§ 3663A(b)(1) and (4). The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Collection of Financial Obligations

17. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

18. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

19. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: Zachary A. Myers
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/16/2016
Date

Janelle A. Rose

I am Ms. Rose's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

6/16/16
Date

Paul D. Hazlehurst, Esq.

## EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true, and if this case had proceeded to trial, the government would have proven them beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, Janelle A. Rose, 21, was a resident of Baltimore, Maryland, and Tucson, Arizona. Rose was formerly employed by an employment agency which placed her as a temporary employee with School A, a global provider of postsecondary education. The computer network of School A is used in and affecting interstate and foreign commerce and communication

On June 8, 2015, Rose began work at School A as a Student Financial Services Representative in Baltimore, MD. Rose was in training between June 8 and June 12, 2015. During her training, Rose was instructed and tested on compliance with student privacy statutes and regulations. Rose was specifically instructed that she was forbidden to use students' private information for any purpose other than assisting them with student loan refunds.

Rose began working independently in or about June 15, 2015. Rose's primary duties were to take inbound phone calls and answer financial aid questions from students. To accomplish her assigned duties, Rose had access to each students' financial information as well as students' email addresses and passwords for their accounts provided by School A. Using her own username and password at a work computer, Rose had the ability to access and change a student's bank account information. School A used this financial information for various purposes including processing student loan refunds. The work computers used by Rose are physically secured at School A, and Rose could not use her credentials to access her employee account from a computer outside of School A's network.

Between June 15 and June 19, 2015, Rose secretly wrote down the names of School A students, their School A account passwords and other student information in a notepad that she then took back to her home. Rose transferred this information to her Apple MacBook Pro. Between June 19 and 23, 2015, Rose used her computer and the student information she stole from School A to access the electronic accounts of at least 40 students from her residence in Baltimore, Maryland. Once into these electronic student accounts, Rose altered the students' bank account information so that each of the students' loan refund payments would be made to the same Green Dot Bank account. Refunds to 20 of the students were processed and $73,996 was fraudulently deposited to Rose's Green Dot Bank account.

Each time an adjustment is made to a student's financial information, account number, address, or bank information, the computer system used by School A generates an email to the student's School A email account, notifying the student of the change. Between June 19 and 23, 2015, Rose accessed School A students' email accounts without authorization, using the information she stole from School A, and deleted the account change notification emails from the students' inboxes.

School A and its vendors discovered Rose's fraud, and Green Dot returned the $73,996 in stolen student loan refund proceeds before Rose was able to withdraw the funds. This money was then returned to the student victims.

On June 27, 2015, Rose was fired by the employment agency that had employed her. Rose subsequently moved to Tuscon, Arizona to attend college.

On September 20, 2015, Rose opened a new Green Dot account in the name of her roommate. That day, Rose used information she stole from School A to access two students' accounts on School A's network without authorization from her residence in Tuscon, Arizona.

Rose changed these two students' bank account information so that any student loan refunds would be paid to the Green Dot account that Rose created in her roommate's name. As a result, the students' loan refunds totaling $11,979.50 were paid to the Green Dot account in the roommate's name. These transactions were rejected by Green Dot, and the money was returned to the victim students.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

10/16/2016
Date

Janelle A. Rose

I am Janelle A. Rose's attorney. I have carefully reviewed this statement of facts with her.

Paul D. Hazlehurst, Esq.